UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DAVID A. SPENCER,

    Debtor.

No. 15-10595 tf7

H. STEVEN MURPHY and
MKM INVESTMENTS, LLC,

    Plaintiffs,

v.

Adv. No. 15-01052 t

DAVID A. SPENCER,

    Defendant.

## **MEMORANDUM OPINION**

    Before the Court is Plaintiffs' motion for summary judgment on their §§ 523(a)(2)(A), (a)(4), and (a)(6)[1] nondischargeability claims against Defendant. Defendant did not respond to the motion. The Court concludes that Plaintiffs' claims based on the liens Defendant filed are nondischargeable under §§ 523(a)(2) and (a)(6), in an amount to be determined by the Court. The Court will permit Plaintiffs to supplement the record for the claims related to a development agreement with Defendant.

        I.    FACTS

    For the purpose of ruling on the motion, the Court finds that the following facts are not in genuine dispute:

---

[1] Unless otherwise stated, all statutory references are to 11 U.S.C.

On March 12, 2015, Defendant filed his bankruptcy case. Plaintiffs[2] brought this adversary proceeding four months later.

MKM entered into an agreement with Defendant to develop real estate near Farmington, New Mexico. The project was unsuccessful. On September 26, 2012, MKM sued Defendant in New Mexico's Eleventh Judicial District Court, in a cause styled *MKM Investments, LLC v. The Clark Spencer Estate, et. al.,* no. D-1116-CV-2012-01197 (the "Development Agreement Action"). MKM asserted claims for breach of contract, fraud, negligent misrepresentation, promissory estoppel, prima facie tort, unjust enrichment, and punitive damages relating to Defendant's conduct in connection with the development agreement.

The state court tried the action in November, 2013. Defendant did not appear. On November 26, 2013, the state court entered a $75,488.70 judgment against Defendant, which included punitive damages (the "Development Agreement Judgment").[3]

On September 23, 2013, Plaintiffs filed a second state court action, styled *H. Steven Murphy and MKM Investments LLC v. David A. Spencer, as an individual, and Presidential Construction, Inc.,* cause no. D-1116-CV-2013-01197 (the "False Lien Action"), asserting claims for cancellation of liens, prima facie tort, fraud, abuse of process, malicious abuse of process, and slander of title, all relating to two liens Defendant filed on Plaintiffs' property.

The state court tried the action on September 10, 2014. The record indicates that Defendant appeared at the trial and defended against the claims. The state court entered a final

---

[2] Plaintiff MKM Investments, LLC ("MKM") is a New Mexico limited liability company, owned by Plaintiff H. Steven Murphy.
[3] The judgment contained findings that Defendant "committed fraud on MKM" and that his conduct was "willful, deliberate, wanton, and fraudulent" and done with "utter indifference and … conscious disregard for the Plaintiff[s]' rights under the [development] agreement."

judgment against Defendant for $84,763.69, which included $75,000 in punitive damages (the "False Lien Judgment"). The state court found, inter alia (the "Findings"):

> 1. The action concerned the filing of two lien claims (the "Lien Claims") by the Defendant and Presidential Construction, Inc. ("Presidential") against real property owned by Plaintiffs, i.e., a parcel known as #4 Road 3263 (the "Road 3263 Property") and a parcel known as 5601 Preserve Drive (the "Preserve Drive Property").
> 2. On August 7, 2013, Defendant and Presidential filed a Claim of Lien on the Road 3263 Property (the "Road 3263 Lien"). In the Road 3263 Lien, Defendant swore under penalty of perjury that there was an agreement for him to provide labor or material for the Road 3263 Property—which Defendant asserted was owned by MKM—between November 14, 2011 and April 29, 2012. It is undisputed, however, that during that time the Clark Spencer Estate (the "Estate"), of which Defendant was then the personal representative, owned the Road 3263 Property. MKM bought the Road 3263 Property from the Estate on June 28, 2013.
> 3. On August 8, 2013 Defendant and Presidential filed a claim of lien on the Preserve Drive Property (the "Preserve Drive Lien"). In the Preserve Drive Lien, Defendant swore under penalty of perjury that "In accordance with an agreement to provide labor and/or material and equipment," he provided $670,721.93 of materials and labor to build a house on the Preserve Drive Property. Defendant admitted, however, that neither he nor Presidential supplied any such materials or labor to the Preserve Drive Property.
> 4. Defendant attempted to support the validity of the Preserve Drive Lien with a purported "Contract for Construction" and a Builder's Risk Policy. However, Murphy was the contractor for the house built on the Preserve Drive Property. Neither Defendant nor Presidential had a contract to build a home on the Preserve Drive Property. The construction contract attached to the Preserve Drive Lien was a forgery.
> 5. Murphy completed construction of the house on the Preserve Drive Property on March 31, 2011. The Preserve Drive Lien was filed August 8, 2013, less than 25 days after Defendant's arrest, and two years and five months after the Preserve Drive house was completed.
> 6. As a building contractor, Defendant knew or should have known that a claim of lien must be filed within 120 days after completion of the contract and can only be filed if a contractor supplied the material or labor for the construction. The Lien Claims did not comply with the New Mexico Materialmen Lien Act (the "Lien Act") and were invalid.
> 7. On April 30, 2012, Murphy delivered a letter to Defendant outlining Defendant's mismanagement of the Estate. Defendant was removed as personal representative of the Estate because of the mismanagement. On July 17, 2013 Defendant was arrested for embezzlement of Estate assets. Defendant's arrest and charge was a direct and natural result of Murphy's letter.

8. The Lien Claims were filed in retaliation for Murphy acting as a witness in Defendant's criminal proceeding. Defendant made false statements in order to file the Lien Claims, which Defendant knew were false and were made with the intent to deceive. When Defendant filed the Lien Claims, he committed perjury with the intent of harming Plaintiffs. Defendant misused the legal process by wrongfully filing the Lien Claims. Defendant misused the legal process with the intent to extort and/or harass and/or intimidate Plaintiffs. Defendant's Lien Claims were frivolous, fraudulent, malicious, and were made without reasonable cause. Defendant's primary motive in misusing the legal process was to accomplish an illegitimate end.

9. Defendant's conduct and actions caused harm and damages to Plaintiffs. Defendant's actions were willful, deliberate, wanton, outrageous, fraudulent and were taken with utter indifference to and conscience disregard of Plaintiffs' rights. Plaintiffs should be awarded punitive damages to deter such conduct.

## II. DISCUSSION

A. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the … court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th

Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539.

Defendant's failure to respond to the summary judgment motion does not mean it must be granted. *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002) ("[A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party."). Rather, the Court must "examin[e] the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id. See also United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004) (court cannot base summary judgment on mere fact that the motion is unopposed, but must consider the merits of the motion); *D.H. Blair & Co. Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (citing and following *5800 SW 74th Street*).

In doing so, the Court "should accept as true all material facts asserted and properly supported in the summary judgment motion." *Reed,* 312 F.3d at 1195.

B. Issue Preclusion.

Plaintiffs argue they are entitled to summary judgment based on principles of issue preclusion.[4] Bankruptcy courts may use issue preclusion in determining whether a debt is nondischargeable. *See Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991) (collateral estoppel principles apply in discharge exception proceedings under § 523); *Lopez Roofing Serv. v. Baker (In re Baker)*, 2013 WL 6528813, at *3 (Bankr. D.N.M. 2013) (discussing elements for issue and claim preclusion).

---

[4] The Court will use the terms "claim preclusion" and "issue preclusion," which are less ambiguous than "res judicata" and "collateral estoppel."

Under New Mexico law,[5] issue preclusion bars re-litigation of an ultimate fact if: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the … [present] … case is different from the cause of action in the prior … [case], (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Ideal v. Burlington Res. Oil & Gas Co. LP*, 233 P.3d 362, 365 (N.M. 2010) (citing *Shovelin v. Cent. N.M. Elec. Coop., Inc.,* 850 P.2d 996, 1000 (N.M. 1993)). *See also Deflon v. Sawyers,* 137 P.3d 577, 583 (N.M. 2006) (the difference between claim preclusion and issue preclusion is that the latter does not require that both suits be based on the same cause of action).

Default judgments cannot form the basis for issue preclusion. *Blea v. Sandoval,* 761 P.2d 432, 435 (N.M. Ct. App. 1988) (a default judgment has no issue preclusion effect); *In re Martinez,* 476 B.R. 627, 633 (Bankr. D.N.M. 2012) (citing and following *Blea*); *In re Beaver,* 437 B.R. 410 (Bankr. D.N.M. 2010) (same).

C.   Development Agreement Judgment.

MKM contends the Development Agreement Judgment provides a sufficient basis for summary judgment on its development agreement claims. In the Development Agreement Judgment, the state court explicitly found that Defendant defrauded MKM. Defendant did not appear at trial, however, and it is not clear from the record how much, if any, he participated before that. The Development Agreement Judgment therefore appears to be in the nature of a default judgment, and is not entitled to preclusive effect. *Blea,* 761 P.2d at 436. In addition, there were no findings about the amount of damage MKM suffered because of Defendant's alleged fraud.

---

[5] New Mexico law governs because the judgments Plaintiffs rely upon are state court judgments. *Strickland v. City of Albuquerque,* 130 F.3d 1408, 1411 (10th Cir. 1997).

Nevertheless, the Court believes MKM should be given an opportunity to supplement the summary judgment record. *See* Fed.R.Civ.P. 56, made applicable by Fed.R.Bankr.P. 7056 (rather than denying summary judgment, courts may allow a party to supplement the record if the party fails to properly support an assertion of fact). MKM may submit independent evidence, if any exists, that Defendant's claims under the development agreement are nondischargeable, and what damages were caused thereby.

D. <u>False Lien Judgment</u>.

Plaintiffs argue that the False Lien Judgment establishes the nondischargeability, under §§ 523(a)(2)(A) and 523(a)(6),[6] of the claims litigated in the False Lien Action.

1. <u>§ 523(a)(2)(A)</u>. Section 523(a)(2)(A) excepts from a debtor's general discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

To establish a claim for false representation or false pretenses under § 523(a)(2)(A), "the claimant must prove by a preponderance of the evidence that: 1) the debtor made a false representation [or in the case of a false pretense, an implied misrepresentation meant to create or foster a false impression]; 2) with the intent to deceive the creditor; 3) the creditor relied on the false representation; 4) the creditor's reliance was [justifiable]; and 5) the creditor was damaged as a result." *In re Sturgeon*, 496 B.R. 215, 222-223 (10th Cir. BAP 2013). *See also In re Mosley*, 2012 WL5193956 at *5 (Bankr. D.N.M. 2012).

The Tenth Circuit Bankruptcy Appellate Panel recently recognized that, in addition to

---

[6] Plaintiffs also assert that their claims are nondischargeable under § 523(a)(4) (embezzlement, larceny, and defalcation while acting in a fiduciary capacity). Neither judgment has findings sufficient to grant summary judgment on the § 523(a)(4) claim.

false representation and false pretenses, actual fraud supplies a separate basis for excepting a debt from discharge. *In re Vickery*, 488 B.R. 680, 691 (10th Cir. BAP 2013). A debtor commits actual fraud when he "intentionally engages in a scheme to deprive or cheat another of property or a legal right." *Id.* (quoting *In re Vitanovich*, 259 B.R. 873, 877 (6th Cir. BAP 2001)). It includes "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (quoting 4 *Collier on Bankruptcy* ¶ 523.08[1][e], p. 523-545 (15th ed., Lawrence P. King ed., 2000)). "Actual fraud is broader than misrepresentation." *Vickery,* 488 B.R. at 690 (quoting *Vitanovich*, 259 B.R. at 877).

Examples of actual fraud include a check kiting scheme or accepting a fraudulent transfer from a family member in violation of the creditor's lien rights, disposing of the property, and absconding with the proceedings. *Vitanovich*, 259 B.R. 873; *McClellan*, 217 F.3d 890. In such cases, there are no misrepresentations or misleading omissions, but the debtor clearly engaged in a fraudulent scheme.

The False Lien Judgment can be the basis for issue preclusion: Plaintiffs and Defendant were parties to the False Lien Action; the causes of action are different; and the Findings were actually litigated and necessarily determined.

The False Lien Judgment establishes that Defendant committed "actual fraud" under § 523(a)(2)(A). First, the Findings show that the false Lien Claims were part of a fraudulent scheme to deprive or cheat Plaintiffs of property or a legal right.[7] The Findings also show that the Lien Claims were a "deceit, artifice, trick, or design involving direct and active operation of

---

[7] Findings, ¶¶ 2-8.

the mind, used to circumvent and cheat another."[8] Finally, the Findings show that fraudulent scheme caused damage or harm to Plaintiffs.[9]

Plaintiffs are entitled to summary judgment that their claims arising from Defendant's fraudulent Lien Claims are nondischargeable under § 523(a)(2)(A).

        2.    <u>§ 523(a)(6) Claim</u>. Debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity" are excepted from the general discharge. 11 U.S.C. § 523(a)(6).

Section 523(a)(6) requires that the debtor's actions be *both* willful and malicious. *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (holding that there must be proof of both a "willful act" and "malicious injury" to establish nondischargeability under Section 523(a)(6)). The "willful" element requires both an intentional act and an intended harm; an intentional act that leads to an unintended harm is not sufficient. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A "willful act" is therefore one in which the debtor "'desire[s] to cause the consequences of his act or ... believe[s] that the consequences are substantially certain to result from it.'" *Moore,* 357 F.3d at 1129 (quoting *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999)). For a debtor's actions to be malicious, they have to be intentional, wrongful, and done without justification or excuse. *Fletcher v. Deerman (In re Deerman)*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012).[10]

---

[8] Findings, ¶8.
[9] Findings, ¶9.
[10] *See also Saturn Systems, Inc. v. Militare (In re Militare),* 2011 WL 4625024, *3 (Bankr. D. Colo. 2011) ("[A] *malicious* act under § 523(a)(6) is a wrongful act, done intentionally, without just cause or excuse.") (internal quotations omitted); *Tso v. Nevarez (In re Nevarez),* 415 B.R. 540, 544 (Bankr. D.N.M. 2009) ("'Malicious' requires that an intentional act be performed without justification or excuse.") (internal quotations omitted).

The Tenth Circuit applies a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). Evidence of the debtor's state of mind may be inferred from the surrounding circumstances. *Nat'l Labor Relations Board v. Gordon (In re Gordon)*, 303 B.R. 645, 656 n. 2 (Bankr. D. Colo. 2003) (it is "absolutely permissible to infer … actual intent to cause injury from … evidentiary facts") (internal citations omitted).

The state court's findings in the False Lien Judgment establish Plaintiffs' § 523(a)(6) claim: Defendant committed intentional acts;[11] he intended to harm Plaintiffs by the acts;[12] the acts were wrongful;[13] Defendant had no justification or excuse for the acts;[14] and the acts injured Plaintiffs or their property.[15]

Plaintiff's claims arising from Defendant's fraudulent Lien Claims are also nondischargeable under § 523(a)(6).

3. <u>Damages</u>.

The state court did not make any findings about the amount of damages Plaintiffs suffered because of the false claims of lien, only that the liens "caused harm and damages." The Court therefore will allow Plaintiffs to supplement the record on damages.

---

[11] Findings, ¶¶ 2, 3, 6, 8.
[12] Findings, ¶ 8.
[13] *Id.*
[14] *Id.*
[15] Findings, ¶ 9.

III.    CONCLUSION

Plaintiffs' claims arising from the false Lien Claims are excepted from discharge under §§ 523(a)(2)(A) and (a)(6).  The amount of the claims must still be determined.  The Court will permit Plaintiffs to supplement to record on this issue and on the dischargeability of any claims arising from the development agreement.

The Court will enter a separate order and a partial summary judgment.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 19, 2015.

Copies to:

Leslie Maxwell
500 Marquette Ave., Suite 650
Albuquerque, NM 87102

David A. Spencer
3318 Ciniza Dr.
Gallup, NM 87301